UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EMELDA CHINYERE IJOMAH-NWOSU,<br><br>Petitioner,<br><br>v.<br><br>ERIC H. HOLDER, JR., et al.,<br><br>Respondents. | Civ. No. 14-2527 (WJM)<br><br><br>OPINION |

Petitioner Emelda Chinyere Ijomah-Nwosu challenges the denial of her naturalization application by the United States Citizenship and Immigration Services ("USCIS"). This matter comes before the Court on Respondents' (collectively, the "Government") unopposed motion for summary judgment made pursuant to Federal Rule of Civil Procedure 56(a). There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, the Government's motion for summary judgment is **GRANTED**.

I.   **BACKGROUND**

Petitioner, a citizen of Nigeria, was issued an F-11 immigrant visa on November 14, 2006, as an unmarried child of a United States citizen. Petitioner's Complaint ("Complaint") ¶ 12, ECF No. 1. On December 21, 2006, prior to Petitioner's entry into the United States, Petitioner married at a local government registry in Nigeria in a private ceremony. Complaint ¶ 18. Subsequently, on February 17, 2007, Petitioner was admitted into the United States for permanent residence based on her previously granted F-11 immigrant visa. Complaint ¶ 19. On October 25, 2008, Petitioner returned to Nigeria for a church wedding with the families of the couple. Complaint ¶ 20.

Approximately four years later, on August 20, 2012, Petitioner filed a Form N-400 naturalization application with the USCIS. Complaint ¶ 22. After reviewing the evidence and conducting an interview, the USCIS denied Petitioner's application. Complaint ¶ 24. The USCIS' denial was based on a determination that Petitioner was not lawfully admitted for permanent residence,

1

since Petitioner—whose F-11 immigrant visa was based on her status as an unmarried child of a United States citizen—had married prior to her admittance into the United States, and, thus, did not meet the eligibility criteria for the immigrant visa she was issued. *Id.*

On July 16, 2013, Petitioner requested a hearing on USCIS' denial of her naturalization application. Complaint ¶ 25. During the hearing, Petitioner asserted that when she appeared at the U.S. Consulate for her F-11 visa interview she was not warned that she could not marry prior to being admitted into the United States, and that she was not provided a "Statement of Marriageable Age" form to read and execute. Complaint ¶ 27. On December 23, 2013, the USCIS affirmed its prior denial of Petitioner's naturalization application. Complaint ¶ 29. Petitioner then filed the instant appeal with this Court on April 21, 2014.

## II.     JURISDICTION & STANDARD OF REVIEW

District courts have jurisdiction to review the denial of an application for naturalization pursuant to the Immigration and Nationality Act (the "INA"). 8 U.S.C. § 1421(c); *Gonzalez v. Sec'y of Dept. of Homeland Sec.*, 678 F.3d 254, 257–58 (3d Cir. 2012). The denial of a naturalization application is reviewed *de novo*. 8 U.S.C. § 1421(c). The applicant bears the burden of proving "by a preponderance of the evidence that he or she meets all of the requirements for naturalization." 8 C.F.R. § 316.2(b); *Berenyi v. District Director, Immigration and Naturalization Serv.*, 385 U.S. 630, 636–37 (1967); *Bagot v. Ashcroft*, 398 F.3d 252, 256 (3d Cir. 2005).

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Smith v. Johnson & Johnson*, 593 F.3d 280, 284 (3d Cir. 2010). A factual dispute is genuine if "a reasonable jury could return a verdict for the non-moving party," and is material if it could affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

## III. DISCUSSION

As part of the statutory requirements for naturalization, an alien applicant seeking to become a United States citizen must establish that he or she has been "*lawfully admitted* to the United States for permanent residence." 8 U.S.C. § 1429 (emphasis added).  The INA states that "[t]he term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws . . . ." 8 U.S.C. § 1101(a)(20).  Consequently, an applicant must demonstrate not only procedural regularity, but also conformance with the substantive legal requirements.  *Gallimore v. Att'y Gn.*, 619 F.3d 216, 223 (3d Cir. 2010) (quoting *In re Longstaff*, 716 F.2d 1439, 1441 (5th Cir. 1983)).

Petitioner does not dispute the fact that she got married after the issuance of her F-11 immigrant visa, and prior to her admittance into the United States.  Complaint ¶¶ 17-19.  The F-11 visa issued to Petitioner is intended for the unmarried children of United States citizens, and requires that the immigrant remain unmarried when applying for admittance into the United States.  *See* 8 U.S.C. § 1153(a)(1); 8 U.S.C. § 1101(a)(39); 22 C.F.R. § 42.72(d).  Thus, when Petitioner applied at a port of entry for admission into the United States, she was not substantively eligible to be admitted under the F-11 immigrant visa issued to her, as she was no longer an unmarried child of a United States citizen.

The fact that Petitioner was erroneously admitted through no fraud on her part does not obviate the "lawfully admitted" statutory requirement.  The Board of Immigration Appeals ("BIA") has held that individuals may be deemed to have been unlawfully admitted due to non-fraudulent reasons.  *See In re Koloamatangi*, 23 I. & N. Dec. 548, 550 (B.I.A. 2003) (interpreting the definition of "lawfully admitted for permanent residence" to instances where the individual was "otherwise not [] entitled to it.")  Although the facts in *In re Koloamatangi* involved fraud, the Court of Appeals for the Third Circuit and many of its sister circuits have affirmed the BIA's interpretation.  *See Gallimore*, 619 F.3d at 224 ("we discern no principled distinction between (1) finding a status adjustment not 'lawful' because the applicant procured it through fraud; and (2) finding a status adjustment not 'lawful' because the applicant was not legally entitled to it for any other reason"); *Villafana v. Holder*, 358 F. App'x 245, 246 (2d Cir. Dec. 21, 2009)

3

("even for those who obtained their [lawful permanent resident] status by mistake rather than fraud, if petitioner fails to demonstrate that he or she had complied with the relevant substantive legal requirements at the time petitioner was admitted for permanent residence, then petitioner was never 'lawfully admitted for permanent residence'"); *Arellano-Garcia v. Gonzales*, 429 F.3d 1183, 1186 (8th Cir. 2005); *Savoury v. Att'y Gen.*, 449 F.3d 1307, 1313 (11th Cir. 2006). Even though the Government mistakenly admitted and granted Petitioner lawful permanent resident status as the unmarried child of a United States citizen, such status is deemed void *ab initio* because it did not comply with the relevant substantive legal requirements that supported Petitioner's eligibility. Because lawful admission as a permanent resident is a prerequisite to naturalization, Petitioner is precluded from naturalizing.

Petitioner advances a second argument based in equity. Applicable regulations require the consular official to inform the applicant that admission as the unmarried child of a United States citizen is allowed only if the child is "unmarried at the time of application for admission at a U.S. port of entry." 22 C.F.R. § 42.72(d). The official must also obtain the immigrant's signature on a "Statement of Marriageable Age" form, which states the same. Petitioner asserts that she was not advised regarding the consequences to her immigrant visa status should she marry prior to admission into the United States, and that the U.S. Consulate did not provide her with the "Statement of Marriageable Age" form to read and execute. Complaint ¶¶ 16, 27. Consequently, Petitioner argues that under the doctrine of equitable estoppel the Government is estopped from denying her naturalization application.

The Third Circuit has held that in addition to establishing the elements of an ordinary claim of estoppel "a litigant must prove 'affirmative misconduct' to succeed on an estoppel claim against the government." *United States v. Asmar*, 827 F.2d 907, 912 (3d Cir. 1987). Though *Asmar* applied this heightened estoppel standard in a tax proceeding, sister circuits have applied the same standard when evaluating estoppel arguments against the government in immigration proceedings. *See, e.g., Mukherjee v. I.N.S.*, 793 F.2d 1006, 1008 (9th Cir. 1986) (cited with approval in *Asmar*, 827 F.2d at 912 n.4); *Shah v. I.N.S.*, 60 F.3d 829 (6th Cir. 1995). Faced with similar facts, the Sixth Circuit found that a failure to provide the statutory warning not to marry prior to admittance constituted at most a breach of the State Department's internal regulations. *Shah*, 60 F.3d at 830. Here,

4

Petitioner has failed to establish that the U.S. Consulate's alleged failure to provide her with the "Statement of Marriageable Age" form and communicate the verbal warning rises to the level of "affirmative misconduct."[1] *See Mukherjee*, 793 F.2d at 1009 (finding that a vice-consul's erroneous advice to the applicant regarding a two-year foreign residency requirement was not affirmative misconduct since it was not a "deliberate lie" or a "pattern of false promises.") Furthermore, this Court lacks the authority to bypass the statutory requirements for citizenship and equitably remedy Petitioner's ineligibility for naturalization. *See Chavarria-Calix v. Att'y Gen.*, 510 F. App'x 130, 133 (3d Cir. 2013) (citing *I.N.S. v. Pangilinan*, 486 U.S. 875, 883-84 (1988)); *Moore v. Thompson*, No. 09–1747, 2010 WL 398633, at *8 (D.N.J. Jan. 27, 2010). Therefore, summary judgment will be entered in the Government's favor.

## IV.   CONCLUSION

For the above reasons, the Government's motion for summary judgment is **GRANTED**. An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: August 27, 2015**

---

[1] The Second Circuit has previously found that failure to warn an immigrant that "her visa would automatically become invalid if she married before arriving in this country" constituted affirmative misconduct. *Corniel-Rodriguez v. Immigration & Naturalization Serv.*, 532 F.2d 301, 302 (2d Cir. 1976). The Sixth and the Ninth Circuit have, however, questioned the continued viability of the Second Circuit's finding in light of subsequent Supreme Court decisions. *See Shah*, 60 F.3d at 830; *Mukherjee*, 793 F.2d at 1009. More recently, the Second Circuit held that "[t]he doctrine of equitable estoppel against the government has narrowed substantially since *Corniel–Rodriguez*." *Ahmed v. Holder*, 624 F.3d 150, 155 (2d Cir. 2010). In light of this, in a case with a similar fact pattern to the instant action, a New York court denied an equitable estoppel argument where petitioner "[had] not introduced any evidence to support her claims that she was naïve, 'was never given a warning or a statement of marriageable age' and 'did not know she was not supposed to marry.'" *Shtykova v. Holder*, No. CV–10–4999, 2013 WL 4501013, at *4 (E.D.N.Y. Aug. 19, 2013).